Karen Ludene **WILLIAMS,** Administratrix of the **Estate of Larry Dale Williams,** Deceased, **Plaintiff,**

v.

**C. T. LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**No. KC–2730.**

United States District Court
D. Kansas.

Sept. 30, 1968.

J. W. Mahoney, of Carson, Mahoney & Fields, Kansas City, Kan., for plaintiff.

J. Donald Lysaught, of Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., and James F. Duncan, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendant.

## MEMORANDUM OF DECISION

ARTHUR J. STANLEY, Jr., Chief Judge.

This is an action on a group life insurance policy issued by defendant to the former employer of Larry D. Williams, and is now before the court on defendant's motion for summary judgment and on plaintiff's motion for summary judgment. (Plaintiff did not actually file a motion, but did file a brief in support of such a motion which is considered by the court as a motion for summary judgment.)

The parties have agreed, and I hold, that there is no genuine issue as to any material fact. The only question, therefore, is whether plaintiff or defendant is entitled to judgment as a matter of law.

The parties have stipulated to the essential facts, and that stipulation was filed at the pretrial conference. Plaintiff is administratrix of the estate of Larry Dale Williams, who had basic coverage of $6,000 under the defendant's policy, which amount has been paid into the registry of the court and subsequently to plaintiff. The issue remaining is whether plaintiff is entitled to receive an additional $6,000, in accidental death benefits.

Williams's coverage was a result of his employment by Johnson County Suburban Lines, Inc., which terminated August 31, 1966. He was killed in an automobile accident on September 21, 1966, and died within ninety days following the date of the accident causing injury. The relevant portions of the policy and its riders are those applying to termination of coverage, and are as follows:

"IX. TERMINATION OF EMPLOYEE'S COVERAGE

"Subject to the following Continuance of Insurance and Conversion Privilege provisions, an employee will cease being insured under this Policy on the first of the following to occur:

"(a) Termination of his continuous service in an Eligible Class of Employees."

\*     \*     \*     \*     \*     \*

"X. CONTINUANCE OF INSURANCE

*31-Day Death Benefit*

"The insurance under the Policy shall continue in force for the 31-day period following the due date of the premium first in default. An employee's insurance shall also continue in force for the 31-day period during which he may be eligible to exercise the Conversion Privilege defined below, whether or not he avails himself of that privilege."

\*     \*     \*     \*     \*     \*

"XI. CONVERSION PRIVILEGE

"This conversion privilege is available during the 31-day period beginning with the termination of an employee's coverage, where such termination is due to:

"(a) termination of his continuous service in an Eligible Class of Employees \* \* \*."

"If the employee applies for it to C. T. Life and Accident Insurance Company during any such 31-day period, C. T. Life and Accident Insurance Company will issue to him an individual policy of life insurance. No evidence of insurability shall be required for the new life insurance coverage.

"The policy shall be on his life and may be in any one of the forms of life insurance then customarily issued by C. T. Life and Accident Insurance Company, except term insurance. However, the employee may elect to have the insurance preceded by single premium term insurance for a period not exceeding one year. The amount to be converted must meet C. T. Life and Accident Insurance Company minimum requirements for the plan selected by the employee.

"The face amount of the new policy shall, at the option of the employee, be equal to or less than the One-Sum Death Benefit in force on his life immediately before termination of his coverage.

\* \* \* \* \* \*

"No additional insurance benefits will be included in the new policy, except with the approval of C. T. Life and Accident Insurance Company at the time the employee applies for the new policy and subject to the furnishing of such requirements as it shall then consider necessary."

Rider No. 2 is entitled "Accident and Sickness Insurance Coverage," and provides, in relevant part:

#### "EMPLOYEE COVERAGE

"Each employee insured under the Group Policy is insured under this Rider.

"An employee will cease being insured for accident and sickness insurance coverage under this Rider on the first of the following to occur:

\* \* \* \* \* \*

"(b) Termination of his continuous service in an eligible class of employees, as defined in the Group Policy."

#### "BENEFITS IN EVENT OF LOSS OF LIFE, LIMB OR SIGHT

(Covering Insured Employees)

"If, directly and independently of all other causes, an employee incurs any loss defined below as a result of accidental bodily injuries sustained while insured, C. T. Life and Accident Insurance Company shall pay the benefit specified below, subject to the following provisions.

"*Loss Defined*

"The insured losses are any of the following that may occur during the 90 days following the date of the accident causing the bodily injuries:

"*Loss of*

"Life

\* \* \* \* \* \*

"*Amount of Benefit*

"The benefit shall be the Principal Sum regardless of the number of such losses resulting from any one accident. However, if the only specified loss sustained is the loss of one hand or one foot or the sight of one eye, then the benefit shall be only one-half of the Principal Sum.

"*Amount of Principal Sum*

"The Principal Sum shall be as shown in the Schedule of Benefits."

■ It should be noted at this point that Kansas requires, by statute, that there be certain provisions included in any group life insurance policy issued in this state. Specifically, K.S.A. 40–434 is relevant here; it provides:

" \* \* \* No policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions \* \* \* :

\* \* \* \* \* \*

"(8) A provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits: *Provided,* Application for the individual policy shall be made, and the

first premium paid to the insurer, within thirty-one (31) days after such termination: *And provided further,* That, (a) the individual policy shall, at the option of such person, be on any one of the forms, except term insurance, then customarily issued by the insurer at the age and for the amount applied for; (b) the individual policy shall be in an amount not in excess of of the amount of life insurance which ceases because of such termination less, in the case of a person whose membership in the class or classes eligible for coverage terminates but who continues in employment in another class, the amount of any life insurance for which such person is or becomes eligible under any other group policy within thirty-one (31) days after such termination: * * *."

Plaintiff argues that the provisions of K.S.A. 40–2201 et seq., which regulate accident and sickness insurance policies issued in Kansas, also are relevant here. But the Kansas statutes specifically provide that *group* sickness and accident policies are excluded from the general rules governing accident insurance. K.S.A. 40–2208. Special rules are set out at K.S.A. 40–2209 regarding *group* sickness and accident insurance, and there is no statutory requirement that the policy contain the conversion privileges found in K.S.A. 40–434(8), *supra.* Therefore, I hold that defendant was not required by statute to guarantee conversion privileges to Williams with respect to the accident and sickness portions of the policy in question.

There remains the question of whether defendant, by contract, extended to Williams continuation of the accident and sickness insurance during the period that the basic life insurance was continued.

■ It should be noted first that the parties did not expressly and clearly agree to conversion privileges on the accident and sickness rider; there is no separate section outlining such rights as appears in the life policy. In explaining the terms of the coverage, the rider refers back to the provisions of the group

policy, "which are not inconsistent with this Rider." The rider provides that an employee ceases to be insured for accident and sickness coverage under the rider upon: "Termination of his continuous service in an eligible class of employees, as defined in the Group Policy." Thus, again, there is a reference back to the provisions of the life policy. Plaintiff argues that this reference back is to Section IX of the policy: "Termination of Employee's Coverage," set out above. Defendant says that the reference back is to the definitions, Section I of the policy, where there are definitions of "continuous service" and "eligible class of Employees." I am of the opinion that the reference back here is to the definitions section of the policy. The reference in the rider stems from the words "as defined," and this reasonably connotes a reference to the definitions section. My conclusion is fortified by the fact that in Section IX of the policy, there is no definition of the words used in the rider. Thus, if the reference back is to Section IX of the policy, then the reference is meaningless, at least in terms of definition. I do not feel that there is any real ambiguity in the language of the rider in this respect; ambiguity can only be created by the plaintiff's interpretation of this clause, which I feel strains the meaning of the words used. And, as plaintiff indicates, the Kansas test for construction is that the policy's terms mean what a reasonable person in the position of the insured would have understood them to mean. Prime Drilling Co. v. Standard Accident Insurance Co., 304 F.2d 221 (10th Cir. 1962), citing Braly v. Commercial Casualty Ins. Co., 170 Kan. 531, 227 P.2d 571 (1951).

There remains the question whether the provisions of the group life policy (Sections IX, X and XI) are also applicable to the rider and its accident and sickness coverage.

■ Section X of the group life policy provides that: "An employee's insurance" continues for 31 days, the period during which he could "exercise the Con-

version Privilege defined below." The conversion privileges in Section XI of the policy are clearly limited to *life* insurance, and do not mention the accidental death coverage, in fact, the policy provides that: "No additional insurance benefits will be included in the new policy \* \* \*." Thus, I feel it is quite clear that the employee does not have the right under the policy to convert to an individual policy anything except the life insurance. (It should also be noted that this is all that is guaranteed to him by statute. K.S.A. 40–434, *supra.*) Does, however, the use of the term: "An employee's insurance" in Section X broaden his rights during the 31-day interim between his termination as an employee and the conversion? These three words, taken by themselves, might indicate so. But the sentence from which they are gleaned gives a different meaning. The sentence referred to here reads:

"\* \* \* An employee's insurance shall also continue in force for the 31-day period *during which he may be eligible to exercise the Conversion Privilege defined below,* whether or not he avail himself of that privilege." (Emphasis added).

Thus the life insurance continues in force for 31 days because the employee is eligible during that period to convert it. But the conversion provisions do not include the accidental death benefits, and so the employee is not eligible to exercise any conversion privileges with respect to them, and they do not continue. Again, I am of the opinion that the contract language is unambiguous, and plaintiff's interpretation of it is strained.

I hold, therefore, that by the express terms of the policy in question, plaintiff is not entitled to receive the additional accidental death benefits, and that defendant is entitled to judgment as a matter of law. Plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be sustained. Counsel for defendant will prepare an appropriate judgment entry.