**Linda WOODWORTH, Plaintiff–Appellant,**

v.

**STONEBRIDGE LIFE INS. CO., Defendant–Appellee.**

No. 07–35952.

United States Court of Appeals, Ninth Circuit.

Argued April 15, 2009.

Resubmitted April 29, 2009.

Filed July 8, 2009.

Donald W. Lojek, Esquire, Lojek & Hall, CTD., Boise, ID, for Plaintiff–Appellant.

Stanley J. Tharp, Esquire, Eberle Berlin Kading Turnbow McKlveen & Jones, Boise, ID, for Defendant–Appellee.

Before: B. FLETCHER, TASHIMA and THOMAS, Circuit Judges.

## MEMORANDUM *

Linda Woodworth appeals the district court's grant of summary judgment to Defendant–Appellee Stonebridge Life Insurance Co. in her breach of contract claim. Because the parties are familiar with the facts and procedural history, we will not recount it here. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

### I

This insurance dispute arises out of a tragic airplane accident in which flight instructor Roger Woodworth lost his life. Idaho law governs the interpretation of the contract in this case. Under Idaho law, the insurer has the burden of proving that an asserted exclusion applies. *See Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 Idaho 100, 936 P.2d 1342, 1345 (1997). In construing an insurance policy, we must "look to the plain meaning of the words to determine if there are any ambiguities." *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 115 P.3d 751, 754 (2005). "An insurance policy provision is ambiguous if it is reasonably subject to conflicting interpretations." *Id.* (internal quotation marks omitted). If we find any ambiguities in the insurance policy, they must be construed against the insurer. *Id.* (citations omitted). However, "when confronted with ambiguous language in an insurance contract," we "must

---

\* This disposition is not appropriate for publication and is not precedent except as provided

by 9th Cir. R. 36–3.

determine what a reasonable person would have understood the language to mean." *Mut. of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 912 P.2d 119, 122 (1996).

The relevant policy provision excluded coverage for "Loss caused by or resulting from: ... an injury while the Covered Person is acting as a pilot or crew member in an aircraft." Even construing ambiguities in this provision against Stonebridge and in favor of coverage, Plaintiff's husband's death fell within the terms of the exclusion.

■ Plaintiff argues that it is unknown who was actually controlling the aircraft at the time it crashed, and that her husband, who was acting as a flight instructor, is not excluded from coverage unless Stonebridge establishes that he was actually in control of the plane at the time of the crash.

Regardless of who was actually piloting the aircraft, summary judgment was properly granted on the ground that Mr. Woodworth was at least acting as a "crew member," as that term is used in the policy. Although the term "crew member" was not defined in the contract, under both a reasonable layperson's definition of the term, as well as the federal regulatory definition of the term, Mr. Woodworth was a "crew member." *See* 14 C.F.R. § 1.1 (defining "crewmember" as "a person assigned to perform duty in an aircraft during flight time"). As the flight instructor and the only pilot certified to fly the twin-engine aircraft, Mr. Woodworth had duties related to the operation of the aircraft and was a "crew member" for purposes of the exclusion. *See Travelers Ins. Co. v. Warner,* 169 Colo. 391, 456 P.2d 732, 734 (1969) (insured was "serving as a member of crew" as pilot in command even if he did not actually do the piloting where he prepared and filed the flight plan, occupied the co-pilot seat from which he could assume pilotage at any time, and was more

extensively licensed and skilled); *cf. Am. Cas. Co. v. Mitchell,* 393 F.2d 452, 454, 456 (8th Cir.1968) (observer during simulated search and rescue flight was not "member of crew" as a matter of law where he "ha[d] nothing to do with the plane's operation" and was "responsible for noting unusual things, ground parties, and landmarks"); *N.Y. Life Ins. Co. v. Atkinson,* 241 F.2d 674, 676–77 (10th Cir.1957) (insured was not "crew member" as a matter of law where duties were to "search for uranium and other minerals" and the insured "did not take any part in [the aircraft's] operation, maintenance, or upkeep").

## II

■ Stonebridge argues that it is entitled to attorney's fees and costs on appeal. Stonebridge advances two arguments for the award of attorney's fees, neither of which is persuasive.

Stonebridge argues it is entitled to attorney's fees under Idaho Code § 12–120(3) because this is a civil action to recover on a contract. However, Idaho Code § 41–1839, entitled "Allowance of attorney fees in suits against insurers," expressly states that "Section 12–120, Idaho Code, shall not apply to any actions between insureds and insurers involving disputes arising under any policy of insurance." Idaho Code § 41–1839(4).

Under Idaho Code § 41–1839(4), "attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended frivolously, unreasonably or without foundation." Plaintiff had an arguable basis in fact and law in pursuing the case and the appeal. Stonebridge is not entitled to fees.

### III

For these reasons, we conclude that the district court properly entered summary judgment in this case. Each side shall bear its own costs.

**AFFIRMED.**

Judge B. FLETCHER, dissenting.

I respectfully dissent. Because Mrs. Woodworth has presented a reasonable interpretation of the exclusion, and because Idaho law requires a court to construe ambiguous exclusions in an insurance contract strictly against the insurer, the district court erred grievously in granting summary judgment to Stonebridge.

Under Idaho law, the first step in interpreting an insurance contract is to determine whether the language of the insurance policy is plain, clear, and unambiguous. *Clark v. Prudential Property and Cas. Ins. Co.,* 138 Idaho 538, 66 P.3d 242, 244–45 (2003) (citing *Martinez v. Idaho Counties Reciprocal Management Program,* 134 Idaho 247, 999 P.2d 902, 905 (2000)). "Determining whether a contract is ambiguous is a question of law upon which [the court] exercises free review." *Id.* (citing *Martinez,* 999 P.2d at 905). "Where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Id.* (citing *Mutual of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 912 P.2d 119, 122 (1996)). "Where the policy is reasonably subject to differing interpretations," however, "the language is ambiguous and its meaning is a question of fact." *Id.* (citing *Moss v. Mid–America Fire and Marine Ins. Co.,* 103 Idaho 298, 647 P.2d 754, 756 (1982)). "A provision that seeks to exclude the insurer's coverage must be strictly construed in favor of the insured." *Arreguin v. Farmers Ins. Co. of Idaho,* 145 Idaho 459, 180 P.3d 498, 500 (2008) (cit-

ing *Moss,* 647 P.2d at 756). The "burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage." *Id.*

We are dealing with an exclusion. The insurance policy excludes "Loss caused by or resulting from: ... an injury while the Covered Person is acting as a pilot or crew member in an aircraft." Mrs. Woodworth argues that the exclusion for "acting as a pilot" is reasonably interpreted to mean acting as a pilot at the time of the crash. She is right. She also argues that the plane in which Mr. Woodworth lost his life did not require a "crew" since it required no second pilot or other persons to operate; that a reasonable person would not consider a flight instructor to be a member of a crew; and that in any event, as with the "acting as a pilot" exclusion, it is impossible to know what Mr. Woodworth was actually doing at the time of the crash. I agree with Mrs. Woodworth. These are reasonable interpretations of the exclusionary clause. Because the exclusionary language is reasonably subject to at least two interpretations, the language is ambiguous. *See Arreguin,* 180 P.3d at 501. Stonebridge, as the insurer, therefore "bears the burden to use clear and precise language when restricting the scope of coverage." *Id.* at 502. Stonebridge has not met this burden; if Stonebridge had intended its provision to exclude coverage for flight instructors, it should have said so in the contract. I, therefore, would hold that the exclusionary provision is ambiguous. I would reverse the district court's grant of summary judgment to Stonebridge and would grant summary judgment to Mrs. Woodworth.