# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36828

THE ESTATE OF JUDY DUMOULIN,
deceased, by and through her personal
representative and JOSEPH DUMOULIN, an
individual,

    Plaintiffs-Appellants,

v.

CUNA MUTUAL GROUP, an Iowa
corporation, authorized by the State of Idaho,
Department of Insurance, to transact business
in the State of Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2011 Term

2011 Opinion No. 25

Filed: March 16, 2011

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

The district court order granting summary judgment is affirmed.

Thomas G. Maile, IV, Eagle, for appellants.

Hall, Farley, Oberrecht & Blanton, P.A., Boise, for respondent. Kevin West argued.

---

HORTON, Justice

The Estate of Judy Dumoulin (the estate) appeals the district court's dismissal of its suit against CUNA Mutual Group (CUNA) for breach of contract and breach of the duty of good faith and fair dealing. The district court granted summary judgment in favor of CUNA, holding that the insurance policy was unambiguous and CUNA was not liable under the policy. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Judy Dumoulin purchased a $40,000 group accidental death and dismemberment insurance policy from CUNA. On March 13, 2008, Ms. Dumoulin was admitted to the

emergency department of West Valley Medical Center (the hospital), complaining of dispnea (shortness of breath). Ms. Dumoulin had a variety of risk factors in her medical history that predisposed her to dispnea and she reported upon her entry into the hospital that she had pneumonia three weeks prior to admission and that she had not completely recovered.

On March 15, 2008, the hospital conducted a CT scan which indicated possible "diffuse atypical pneumonia concerning for maybe a fungal infection, as well as nodules concerning for possible malignancy." That evening, Ms. Dumoulin began demonstrating signs of respiratory failure. The next day, Ms. Dumoulin was found on the floor without a pulse or respiration. She was resuscitated and placed on a ventilator and a CT scan indicated a "worsening progression" of her condition. A later brain CT scan revealed a "global anoxic brain injury." Following discussions with physicians, the family agreed to withdraw life support and Ms. Dumoulin was declared dead on March 17, 2008. Ms. Dumoulin's autopsy report revealed that she died from pre-existing bronchopneumonia with superimposed aspiration pneumonia.

The estate subsequently mailed a Proof of Loss Claim to CUNA. On June 18, 2008, CUNA denied liability, asserting that Ms. Dumoulin's death was not covered by the policy based on the illness and medical conditions exclusions. The estate then filed suit against CUNA, alleging breach of contract and breach of the duty of good faith and fair dealing. It alleged that Ms. Dumoulin's conditions were treatable, that the hospital was negligent in failing to treat her conditions, and that the negligence resulted in her death.

CUNA moved for summary judgment, arguing that no material fact existed as the policy did not provide coverage in the circumstances of Ms. Dumoulin's death. CUNA's motion was supported by an affidavit of counsel providing the estate's responses to discovery requests. The estate responded to the motion by providing affidavits from Dr. Stephen J. Bekanich, M.D., Sheri Arnold (Ms. Dumoulin's daughter), Joseph Dumoulin (Ms. Dumoulin's husband and personal representative of the estate), and the estate's attorney. Dr. Bekanich's affidavit set forth his opinion that Ms. Dumoulin's health care providers had breached applicable standards of care and that appropriate medical treatment would have resulted in Ms. Dumoulin being "stabilized to an appropriate condition."

The district court heard argument on July 16, 2009, and made a ruling from the bench granting summary judgment. The court found that there was no genuine issue of material fact and that Ms. Dumoulin's death was not an accident under the policy. The district court further

held that there was no evidence that Ms. Dumoulin's death "was caused directly by the accident and independent of all other causes." Finally, the district court held that because Ms. Dumoulin died from complications arising from pneumonia, her death was not independent of her illness, and because her death occurred during the course of medical treatment, recovery was barred by reason of an exclusion for losses "due to any disease, sickness, bodily or mental illness, or complication resulting from medical treatment, surgery, pregnancy or childbirth." On July 21, 2009, the district court entered its order granting CUNA's motion for summary judgment.[1] The district court entered judgment on July 28, 2009, and the estate timely appealed.

## II. STANDARD OF REVIEW

We have previously articulated the standard of review for summary judgment in cases involving an insurance contract as follows:

> When reviewing a district court's grant of summary judgment, this Court uses the same standard a district court uses when it rules on a summary judgment motion. *Jordan v. Beeks*, 135 Idaho 586, 589, 21 P.3d 908, 911 (2001). Summary judgment shall be rendered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court will liberally construe the record in favor of the party opposing the motion for summary judgment and will draw all reasonable inferences and conclusions in favor of that party. *Farmers Ins. Co. of Idaho v. Talbot*, 133 Idaho 428, 431, 987 P.2d 1043, 1046 (1999).

> "When interpreting insurance policies, this Court applies the general rules of contract law subject to certain special canons of construction." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003). "The general rule is that, because insurance contracts are adhesion contracts, typically not subject to negotiation between the parties, any ambiguity that exists in the contract 'must be construed most strongly against the insurer.'" *Talbot*, 133 Idaho at 432, 987 P.2d at 1047 (quoting *Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996)). Whether an insurance policy is ambiguous is a question of law over which we exercise free review. *Id.*

*Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008).

## III. ANALYSIS

**A.      Ms. Dumoulin's death was not caused by an injury under the terms of the policy as it was not effected solely through external means.**

---

[1] On July 17, 2009, the district court entered a written order granting CUNA's motion to strike portions of the affidavits submitted by Joseph Dumoulin and Sheri Arnold. The estate has not appealed this order.

The policy in question provided coverage for accidental death and accidental dismemberment.  The estate's claim is based upon the contention that Ms. Dumoulin's death was an accidental death.  In order to prevail on appeal, the estate must show that Ms. Dumoulin's death was the result of an event within the scope of coverage provided by the policy and that the death was not the result of an event included in the policy's list of exclusions.  Because we find no genuine issues of material fact exist and that Ms. Dumoulin's death was not an accidental death as defined by the policy, we do not reach the question of whether any of the exclusions apply.

The policy provides coverage for covered persons for "accidental death."  There is no dispute that Ms. Dumoulin was a covered person.  The policy defines "accidental death" as "[d]eath resulting from an injury, and occurring within 1 year of the date of the accident causing the injury."  "Injury" and "injuries" are defined by the policy as "[b]odily damage or harm which: (a) is caused directly by an accident and independently of all other causes; (b) is effected solely through external means; and (c) occurs while a covered person's insurance is in force . . . ."  In turn, the policy defines "accident" as "[a]n occurrence which is unexpected or unforeseen, either as to its cause or as to its result."

The estate argued before the trial court that medical malpractice was an accident within the definitions provided by the policy and that Ms. Dumoulin's death resulted from that accident.  Thus, the district judge focused on the question of whether Ms. Dumoulin's death was "accidental" under the terms of the policy.  This Court previously held that:

> the meaning of the word 'accident' in the contract at bar, must be that of the average man.  Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, and unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by courts.

*O'Neil v. N.Y. Life Ins. Co.*, 65 Idaho 722, 726, 152 P.2d 707, 708 (1944) (quoting *Clancy v. John Hancock Mut. Life Ins. Co.*, 156 Misc. 732, 735 282 N.Y.S. 510, 513 (N.Y. City Ct. 1935)).  As the Florida Supreme Court put it, "the average person buying accident insurance policies assumes that he is covered for any fortuitous and undesigned injury."  *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 471 (Fla. 1993).  Applying the common understanding of an accident to malpractice, the patient's inability to readily foresee or prevent malpractice indicates

that it is an "unforeseen, unexpected, extraordinary, and unlooked-for mishap" and therefore an accident. *O'Neil*, 65 Idaho at 726, 152 P.2d at 708.

However, in order to be covered by the policy, the death must be more than merely accidental. Rather, the death must result from an "injury" within the definition of the policy. As noted above, injuries are defined by the policy as "[b]odily damage or harm which: (a) is caused directly by an accident and independently of all other causes; (b) is effected solely through external means; and (c) occurs while a covered person's insurance is in force . . . ." While the arguments below focused on the question of accident, the more relevant question is whether any harm in this case was effected solely through external means. And despite the estate's assertion that we must construe the language of insurance policies as "applied in the common speech of men," "[w]here the language used in an insurance policy is clear and unambiguous, the language must be given its plain, ordinary meaning." *Farm Bureau Ins. Co. of Idaho v. Kinsey*, 149 Idaho 415, ___, 234 P.3d 739, 743 (2010) (citing *Allstate Ins. Co. v. Mocaby,* 133 Idaho 593, 597, 990 P.2d 1204, 1208 (1999)).

In the present case, the estate has maintained that the hospital's negligence was in its failure to treat Ms. Dumoulin. The uncontroverted evidence before the district court established that Ms. Dumoulin's death was the result of natural processes. For purposes of summary judgment, CUNA did not challenge the estate's contention that Ms. Dumoulin's health care providers failed to provide appropriate care. It was natural and internal processes that ultimately resulted in Ms. Dumoulin's death, not "bodily harm or damage … effected solely through external means." As Ms. Dumoulin's death was not the result of an injury as defined by the policy, we affirm the district court's grant of summary judgment. Because Ms. Dumoulin's death was not an accidental death as defined by the policy, we do not reach the question of whether Ms. Dumoulin's death would fall within the policy's "medical treatment" or "illness" exclusions.

### B. We decline to award attorney fees.

CUNA seeks attorney fees under I.C. § 41-1839(4) which allows an award of attorney fees where the Court finds "that a case was brought, pursued, or defended frivolously, unreasonably, or without foundation." We do not find that this case was pursued frivolously, unreasonably, or without foundation and therefore decline to award attorney fees. The estate

requests an award of attorney fees under the same statute. Because the estate has not prevailed, it is not entitled to an award of attorney fees.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment in favor of CUNA. We deny the parties' requests for attorney fees. Costs to CUNA.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.